ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JAN 15 PM 3 31
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MORRIS SCOTT HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 312-099 |
| ) | |
| Doctor DALRYMPLE, Johnson State ) | |
| Prison, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Hays State Prison in Trion, Georgia, brought the above-captioned case in the Middle District of Georgia pursuant to 42 U.S.C. § 1983.[1] On October 19, 2012, the case was transferred to the Southern District because the events of which Plaintiff complains allegedly occurred at JSP, which is in the Southern District. (Doc. no. 5.) Plaintiff was thereafter granted permission to proceed *in forma pauperis* ("IFP") and, later, ordered to amend his complaint because the form on which he submitted his original complaint was for the Middle District and therefore did not contain the information required by the Southern District. (Doc. nos. 8, 13.) Plaintiff timely submitted an amended complaint on November 20, 2012. (Doc. no. 14.)

Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect

---

[1] Although he is currently confined at Hays State Prison, Plaintiff's complaint concerns events that allegedly occurred at Johnson State Prison ("JSP"). (See doc. no. 15.)

potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted.[2] 28 U.S.C. §§ 1915(e) & 1915A.

I. **BACKGROUND**

Plaintiff names the following Defendants in his complaint: (1) Doctor Dalrymple, a physician at JSP; (2) Doctor Ajibade, another physician at JSP; and (3) Jose Morales, the warden at JSP. (Doc. no. 14, pp. 1, 4.) Plaintiff first alleges that, while incarcerated at an unidentified prison other than JSP on December 6, 2010, he was diagnosed as having a bulging disc in his back, spinal nerve damage, and arthritis in the right side of his body. (Id. at 5.) Plaintiff alleges that a neurologist at Augusta State Medical Prison then prescribed physical therapy, pain medication, and nerve relaxers, presumably as a response to that diagnosis. (Id.) Plaintiff alleges that he was transferred to JSP on July 2, 2011, and that, on July 5, 2011, he submitted a health service request form to Defendant Dalrymple requesting the provision of his medication. (Id.) Plaintiff asserts that the request was ignored, and that he then submitted two more requests on July 11, 2011, and July 22, 2011 – this time to both Defendants Dalrymple and Ajibade – which were also ignored. (Id.) Plaintiff alleges that, in sum, he was denied his medication from July 2, 2011, until August 5, 2011, and that, as

---

[2]Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

2

a result, he was immobilized, subjected to "excruciating pain and suffering," and forced to wear diapers. (Id.)

Plaintiff next alleges that, when JSP finally began distributing his medication, Defendant Dalrymple ordered that the individual medications be removed from their capsules or crushed, and then mixed together in a cup of water prior to being given to Plaintiff. (Id.) Plaintiff alleges that, on September 2, 2011, due to that method of ingesting his medication, he began to experience chest pains, stomach illnesses, and blisters on his tongue and "lobe." (Id. at 6.) Plaintiff additionally alleges that he is in imminent danger of a heart attack and ulcers as a result of the distribution method. (Id.) Plaintiff alleges that he submitted health service request forms on January 10, January 18, and January 24, 2012, requesting that the method be discontinued and that he receive treatment for the conditions that had resulted from the method thus far, and that those requests were ignored. (Id.) Finally, Plaintiff alleges that he "attended an appointment" with Defendant Dalrymple on February 8, 2012, but that Defendant Dalrymple did not address the method in which Plaintiff's medication was provided, nor provide any treatment for the illnesses allegedly caused by that method. (Id.)

Plaintiff next alleges that, on February 21, 2012, Defendant Morales approached him while he was in physical therapy rehabilitation and escorted him to "Chief Counselor Price's office." (Id.) Plaintiff alleges that Defendant Morales then, in the presence of Chief Counselor Price and a number of other individuals not named as defendants to this lawsuit, read aloud a copy of a letter that Plaintiff had written to Commissioner Brian Owens on February 12, 2012. (Id.) Plaintiff alleges that Defendant Morales then said, "You don't write my boss and tell him anything," and subsequently ordered Plaintiff to be placed in administrative segregation. (Id.) Plaintiff also alleges that Defendant Morales is "negligent

3

in the [loss] of his personal property," in that, following Defendant Morales's February 21st order on that Plaintiff be placed in administrative segregation, certain items of Plaintiff's personal property were not returned to him and he was not "issued [a] personal property inventory sheet." (Id.) Plaintiff alleges that, on March 1, 2012, he was transferred to Smith State Prison "as retaliation against [him] for exercising [his] First Amendment right to free speech." (Id.)

Finally, in what appears to be an unrelated incident, Plaintiff alleges that Defendant Morales violated his free speech rights on January 1, 2012, when Defendant Morales instigated a "no talking" policy in the prison dining hall and then "ejected" Plaintiff from the dining hall following Plaintiff's refusal to comply. (Id.) Plaintiff alleges that he was subsequently "denied twenty-one meals." (Id.) Plaintiff seeks an award of monetary damages against each Defendant. (See id. at 7.)

## II. DISCUSSION

### A. No Claim for Deprivation of Property

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff has failed to state a viable § 1983 claim against Defendant Morales related to the alleged disappearance of Plaintiff's personal property following his confinement to administrative segregation. (Id. at 6.) Plaintiff's allegation that he was not issued a "personal property inventory sheet" related to those items does nothing to support his attempted claim, especially considering that Plaintiff makes no effort to explain the utility of that form or why he believes he was entitled to it. (Id.) More importantly, to the extent that Plaintiff asserts

4

that Defendant Morales has wrongfully confiscated his property, the Eleventh Circuit Court of Appeals has explained that the State's seizure and retention of an individual's property does not give rise to liability under § 1983 "if a meaningful postdeprivation remedy for the loss is available." Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). For example, where state law provides an adequate postdeprivation remedy for the loss of property, a § 1983 due process claim will not lie. Id. (holding that existence of Georgia state law claim for conversion of property precluded § 1983 due process claim against state officers for unlawfully seizing and retaining plaintiff's property); see also Morefield v. Smith, 404 F. App'x 443, 445 (11th Cir. 2010) (*per curiam*) (rejecting § 1983 due process claim against prison officials for seizure of plaintiff's property where plaintiff "had an adequate post-deprivation remedy under state law because he could pursue a tort action for conversion of his personal property").

Here, Plaintiff's attempt to assert a § 1983 claim relating to the loss of his property fails because Georgia law provides an adequate postdeprivation remedy for such a claim. As noted by the Eleventh Circuit Court of Appeals in Lindsey, O.C.G.A. § 51-10-1 provides a postdeprivation remedy in the form of a statutory state law conversion action. 936 F.2d at 561. Moreover, this state law authorizes claims against state officials for wrongfully depriving an individual of personal property. Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (noting that O.C.G.A. § 51-10-1 constitutes "an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law"). Because Georgia law provides Plaintiff with an adequate postdeprivation remedy, Plaintiff's allegation relating to the disappearance of his personal property fails to state a viable § 1983

5

claim.[3]

**B.     No Claim Related to "No Talking" Policy**

Plaintiff's claim that Defendant Morales violated his First Amendment right to free speech by imposing a "No Talking" policy in the prison dining hall and then ejecting Plaintiff from the premises for his failure to comply with the policy is equally unavailing. (Doc. no. 14, p. 6.) Although it is an incontrovertible fact that the First Amendment guarantees the freedom of speech, "running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." Turner v. Safley, 482 U.S. 78, 84-85 (1987). Therefore, prison officials are "accorded latitude in the administration of prison affairs." Cruz v. Beto, 405 U.S. 319, 321 (1972). Notably, that latitude includes "the withdrawal or limitation of many [inmate] privileges and rights," Pell v. Procunier, 417 U.S. 817, 822 (1974), such that "an inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's 'status as a prisoner or with the legitimate penological objectives of the corrections system.'" Smith v. Mosley, 532 F.3d 1270, 1277 (11th Cir. 2008) (quoting Pell, 417 U.S. at 822).

Here, Plaintiff does not allege that the "No Talking" rule was not related to a legitimate penological objective, that he was somehow singled out from the prison population at large by the policy, or that he was engaged in any sort of "protected speech" within the contemplation of the First Amendment. See, e.g., Snyder v. Phelps, 131 U.S. 1207, 1215

---

[3]The Court additionally notes that Plaintiff has provided absolutely no explanation as to how Defendant Morales is responsible for the loss of his property, and has instead merely offered the entirely conclusory assertion – devoid of any supporting facts – that Defendant Morales "is negligent in the [loss] of Plaintiff's personal property." (Doc. no. 14, p. 6.)

(2011) (noting that not all speech is of equal First Amendment importance, and that, "where matters of purely private significance are at issue, First Amendment protections are often less rigorous"). Rather, Plaintiff's allegations make clear that he simply broke a prison rule and was subsequently disciplined for the infraction, but he mistakenly conflates the protections offered to him under the First Amendment with a general and irrefutable right to *speak* whenever he so desires without repercussions. That being the case, Plaintiff's allegations present a situation akin to a student receiving a detention for being disruptive in class, and, as pled, are no more legally actionable than that common – and typically unlitigated – scenario. Therefore, as to Defendant Morales's "No Talking" policy, Plaintiff has failed to state a First Amendment claim upon which relief can be granted.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claim related to the disappearance of his property, as well as his claim related to the "No Talking" policy in the prison dining hall, be **DISMISSED** for failure to state a claim upon which relief can be granted.

SO REPORTED and RECOMMENDED this 15th day of January, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE